FILED

2006 Nov-13  AM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DERITHA BASSHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CONTINENTAL CASUALTY** | ) | **Civil Action No. CV-06-S-630-NE** |
| **COMPANY; HARTFORD LIFE** | ) | |
| **GROUP INSURANCE COMPANY;** | ) | |
| **PPG INDUSTRIES, INC.; and PPG** | ) | |
| **INDUSTRIES, INC. EMPLOYEE** | ) | |
| **WELFARE PLAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Deritha Bassham, commenced this action on February 21, 2006, in the Circuit Court of Madison County, Alabama.[1]  In her complaint, plaintiff prayed for long term disability benefits allegedly due under two group insurance policies. She also sought compensatory and punitive damages for bad faith denial of insurance coverage.[2]  Plaintiff named numerous entities as defendants, including her employer, PPG Industries, Inc. ("PPG"), and the Plan itself, PPG Industries, Inc., Employee

---

[1] Doc. no. 1 (Notice of Removal), Ex. A (State Court Complaint).

[2] *See id.*

Welfare Plan ("the Plan").[3]  All defendants joined in removing the action to this court, relying principally upon federal question jurisdiction pursuant to 28 U.S.C. § 1331, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.[4]  Plaintiff did not move to remand.[5]

Soon after removal, defendants jointly filed an omnibus motion asking the court to:  (1) dismiss plaintiff's state law claims and extracontractual damages; (2) dismiss plaintiff's employer (PPG) as a party to this lawsuit; and (3) strike plaintiff's jury demand.[6]  Each of these requests, to be granted, requires a finding that ERISA controls the decision in this case.[7]  Because defendants attached an informative affidavit to their reply brief,[8] the court converted the aspects of the motion seeking dismissal to a motion for partial summary judgment, and gave appropriate notice to the parties.[9]  *See* Fed. R. Civ. P. 12(b); *Property Management & Investments*, *Inc. v.*

---

[3] *See id*.  Two of the original defendants — Hartford Life & Accident Insurance Company, and Hartford Life Insurance Company — were subsequently dismissed by stipulation of the parties. *See* doc. no. 6 (Stipulation of Dismissal); Order Approving Dismissal of Fewer than All Defendants (April 7, 2006).

[4] Doc. no. 1.

[5] Doc. no. 8 (Plaintiff's Response to Notice of Removal) (conceding federal question jurisdiction under ERISA as to count one, and claiming supplemental jurisdiction under 28 U.S.C. § 1367 as to counts two and three).

[6] Doc. no. 4 (Defendants' Motion to Dismiss and Motion to Strike).

[7] *See generally id*.

[8] Doc. no. 11 (Defendants' Reply in Support of Motion to Dismiss and Motion to Strike), Ex. 1 (Affidavit of Dina Glance).

[9] Doc. no. 19 (Conversion Order).

*Lewis*, 752 F.2d 599, 605 (11th Cir. 1985).

<b>PART ONE</b>

<i>Summary Judgment Standards</i>

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (emphasis supplied). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

-3-

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  *See also Anderson v.*

*UNUM Provident Corp.*, 369 F.3d 1257, 1262 (11th Cir. 2004).

## PART TWO

### *Factual and Legal Background* [10]

The facts involved with the present motion are not in material dispute.  Prior

to filing this lawsuit, plaintiff was a busbar room operator for defendant PPG.[11]  Due

to her status as a PPG employee, plaintiff was entitled to, and did, enroll in the PPG

Industries, Inc., Employee Welfare Plan.[12]  As a part of this plan, plaintiff was eligible

for benefits under a primary long term disability policy.[13]  Additionally, plaintiff took

advantage of a voluntary supplemental long term disability benefits policy, also

offered through her employer.[14]  Dina Glance, an employee in PPG's Human

Resources Department, explained the interrelation of the two policies in an affidavit:

---

[10] ***Nota bene*** that plaintiff filed an Amended Complaint (doc. no. 12) after the case was removed to this court, which adds a claim for wrongful termination of employment under 29 U.S.C. § 1140.  *See* doc. no. 12, p. 9.  Although the original complaint was the controlling pleading at the time the motions to dismiss were filed — and the relevant counts were not altered by the amendment — the rulings herein will obviously relate to the Amended Complaint.  For that reason, all further citations to the complaint will be to the Amended Complaint.

[11] *Id.* at Count 1, ¶ 5.

[12] *Id.*

[13] *Id.*

[14] *Id.* at Count 2, ¶ 1.

Generally speaking, the basic LTD policy provides a benefit for long term disability equal to 50% of an employee's pre-disability base pay, less offsets.  The Supplemental LTD benefit is offered by PPG to its employees, including [plaintiff] Bassham, who wish to increase the benefit which may be available to them by an additional 15% of their pre-disability base pay, less offsets.[15]

In her pleadings, plaintiff alleges that she is disabled due to "multiple medical conditions," but was nonetheless wrongfully denied coverage under both the primary and supplemental policies.[16]  Ultimately, plaintiff claims that she was terminated as a PPG employee due to her requests for benefits under these policies.[17]  Plaintiff's Amended Complaint is divided into four counts.  The first alleges a right to benefits under the primary policy, pursuant to ERISA.[18]  The second count pertains solely to the supplemental policy, and it appears to rely primarily — though not exclusively — upon state contract law.[19]  Count three seeks compensatory and punitive damages for defendants' bad faith denial of coverage, apparently under *both* policies.[20]

---

[15] Doc. no. 11, Ex. 1, ¶ 2.

[16] *E.g.*, doc. no. 12, Count 1, ¶ 5; *id*. at Count 2, ¶ 4.

[17] *Id*. at Count 3, ¶ 6.

[18] *Id*. at Count 1.  Count one is entitled "ERISA Benefits."  *Id*.  Plaintiff makes clear that she wishes to invoke the court's jurisdiction under ERISA in the body of this claim as well.  *See id*. at ¶¶ 2, 3.

[19] *Id*. at Count 2.  Count two is labeled "Disability Insurance Contract," and plaintiff repeatedly states that "the denial of benefits is a breach of the supplemental contract," but her prayer for relief requests attorneys' fees pursuant to ERISA, and at one point she states that she "has exhausted all administrative remedies under the terms of the Plan."  *See id*. at ¶¶ 4-7.

[20] *Id*. at Count 3.  Although plaintiff states in her response brief that count three only seeks damages for bad faith denial of coverage under the *supplemental* policy, *see* doc. no. 7 (Plaintiff's

Finally, count four states a claim for wrongful termination of employment following a request for benefits, in violation of ERISA.[21]

Defendants' problem with plaintiff's complaint is that ERISA is somewhat of an overpowering statute. As discussed more fully below, *once triggered*, the Act's broad preemptive provisions generally call for displacement of the sprawling array of state law causes of action, and substitution of a confined and uniform civil enforcement regime. *See*, *e.g.*, *Swerhun v. Guardian Life Insurance Co. of America*, 979 F.2d 195, 197 (11th Cir. 1992) (noting breadth of preemptive provisions). While benefits are recoverable, "the various types of relief available to plaintiffs in civil actions brought pursuant to ERISA's civil enforcement scheme do not include extra-contractual or punitive damages." *Amos v. Blue Cross & Blue Shield of Alabama*, 868 F.2d 430, 431 (11th Cir. 1989). Moreover, "no Seventh Amendment right to a

_____

Response to Motion to Dismiss), p. 6, the language employed in the Amended Complaint belies this conclusion. Count three is captioned "Bad Faith Denial of Insurance." Doc. no. 12, Count 3. In that count, plaintiff plainly alleges that "Defendants acting by and through their agents and employees did intentionally refuse to pay the benefits due under the terms of the Long Term Disability Plan, the Supplemental Contract and the insurance policies . . . without a factual or legal legitimate, arguable or debatable reason." *Id*. at ¶ 5. In her prayer for that count, plaintiff states that "[a]s a result of the intentional refusal to pay in bad faith by the Defendants, the Plaintiff has been caused to suffer damages of the loss of the benefits under the Long Term Disability Plan, [*and*] the Supplemental Contract . . . [as well as] mental anguish, loss of enjoyment of life, and other damages." *Id*. at ¶ 6. Therefore, in the interest of clearing up any future confusion, the court will construe count three to state a claim for bad faith denial of coverage under *both* policies.

[21] *Id*. at Count 4. This count concludes that PPG "did terminate the employment of and did discharge the Plaintiff from employment with the Defendants [*sic*]. . . in violation of 29 [U.S.C.] § 1140."

jury trial exists in actions brought pursuant to ERISA." *Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522, 1527 (11th Cir. 1996), *cert. denied*, 519 U.S. 930 (1996).

Plaintiff herself agrees that the *primary* policy is governed by ERISA.[22]  Thus, it is axiomatic that the additional claim for bad faith denial of benefits under that policy cannot remain.  *See, e.g., Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987) (holding that state law bad faith, breach of contract, and fraud claims are preempted by ERISA); *Gilbert v. Alta Health & Life Insurance Co.*, 276 F.3d 1292, 1297-1301 (11th Cir. 2001) (holding specifically that Alabama bad faith claims are preempted by ERISA where that statute applies).  Likewise, there can be no jury trial of count one, which relates solely to the ERISA-governed primary policy.  *See Stewart*, 75 F.3d at 1527.  Given the absence of any real debate on these points, the court takes them for granted and limits its discussion below to the principal question presented:  whether the *supplemental* policy also is subject to ERISA.  If it is, even plaintiff concedes that the remainder of her state law claims are due to be dismissed, and her jury demand stricken.[23]  Alternatively, if the supplemental policy escapes

---

[22] Doc. no. 7, pp. 1-2 ("The Plaintiff admits that the primary PPG Employee Welfare Plan is an ERISA Plan and denies that the Supplemental Contract is an ERISA, [*sic*] plan.").

[23] *See id*. at p. 5 (explaining that plaintiff will "concede that if this Court were to determine that the Supplement is a part of the ERISA Plan then the Defendant's Motion as to the state law claims, extra-contractual damages and the jury demand are to be granted").

ERISA's long shadow, the state law claims related to that policy may continue to be litigated in this court.  *See* 28 U.S.C. § 1367; *Jones v. LMR International*, *Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006).

Regardless of the resolution of the supplemental policy issue, the court must also address the other focus of the motion — *i.e.*, whether plaintiff's employer, PPG, is a proper defendant for the counts of the complaint seeking recovery of disability benefits.  Defendants argue that PPG should be dismissed because ERISA "only permits suits against the plan as an entity in these situations."[24]  Plaintiff responds that, at least with respect to the primary policy, PPG is the plan administrator, and thus can be held liable under ERISA.[25]  *See Hamilton v. Allen-Bradley Co.*, *Inc.*, 244 F.3d 819, 824 (11th Cir. 2001) (holding that "in the Eleventh Circuit, [29 U.S.C. § 1132(a)(1)(B)] confers a right to sue the plan administrator for recovery of benefits" and other violations).  All of these matters will be taken up below.

## PART THREE

*Is the Supplemental Policy Subject to ERISA?*

### A.    Overview of ERISA

Congress enacted ERISA to defend "the interests of participants in employee

---

[24] Doc. no. 4, p. 12.

[25] Doc. no. 7, p. 18.

benefit plans and their beneficiaries. . . ." 29 U.S.C. § 1001.

> In passing ERISA, Congress's purpose was twofold: to protect employees and to protect employers. *See McMahon* [*v. Digital Equipment Corp.*, 162 F.3d 28, 35-36 (1st Cir. 1998)]. Congress wanted to safeguard employee interests by reducing the threat of abuse or mismanagement of funds that had been accumulated to finance employee benefits, *see Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987), while at the same time safeguarding employer interests by eliminating "the threat of conflicting and inconsistent State and local regulation" of employee benefit plans, [*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 657 (1995) (quoting 120 Cong. Rec. 29197 (1974))].

*Demars v. CIGNA Corp.*, 173 F.3d 443,446 (1st Cir. 1999).

ERISA governs "employee benefit plans," 29 U.S.C. § 1003, and all "employee welfare benefit plans," such as group sickness or disability programs, are also "employee benefit plans." *Id.* at §§ 1002(1)(A), (3). The Act defines an "employee welfare benefit plan" for purposes of ERISA governance as being:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment.

*Id.* at § 1002(1). Therefore, in order for an employee plan to be governed by ERISA, there must be (1) a plan, fund, or program (2) established or maintained (3) by an employer or an employee organization (4) for the purpose of providing "benefits in

the event of sickness, accident, disability, death or unemployment" (5) to plan participants and their designated beneficiaries.  *See, e.g., Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 (11th Cir. 2004); *Glass v. United of Omaha Life Insurance Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982).

Before diving into this potentially complex analysis, however, "courts usually begin by examining whether the plan falls into the regulatory safe harbor, which excludes from ERISA's jurisdictional ambit certain group or group-type insurance programs offered by an insurer to employees or members of an employee organization." *Anderson*, 369 F.3d at 1263 n.2.  Assuming that this so-called "safe harbor" provision applies, ERISA does not; consequently, state law claims ordinarily preempted by that Act would remain viable.  *Id.* at 1262.  The pertinent regulation provides as follows:

> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1)  No contributions are made by an employer or employee organization;
>
> (2)  Participation [in] the program is completely voluntary for employees or members;

(3)  The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4)  The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

In keeping with the accepted practice, the court first considers whether this "safe harbor" provision applies and, if it does not, then examines the other prerequisites for qualification as an ERISA benefit plan.  *See Anderson*, 369 F.3d at 1263 n.2 (noting that "a plan that falls outside of the safe harbor exception does not necessarily fall within the jurisdiction of ERISA").

## B.    Does the Supplemental Policy Fall Within the Regulatory "Safe Harbor"?

At the outset, it is notable that "[the] failure to meet even one of the factors [listed in 29 C.F.R. § 2510.3-1(j)] will keep a plan out of the statutory safe harbor." *Shipley v. Provident Life & Accident Insurance Co.*, 352 F. Supp. 2d 1213, 1216 (S.D. Ala. 2004).  This is critical, because "[d]efendants do not dispute [that] the first, second and fourth requirements [are met]."[26]  Thus, all that stands between plaintiff

---

[26] Doc. no. 11, p. 6.

and freedom from the strictures of ERISA is the court's affirmation that:

> The sole functions of the employer or employee organization with respect to the program are, *without endorsing the program*, [1] to permit the insurer to publicize the program to employees or members, [2] to collect premiums through payroll deductions or dues checkoffs and [3] to remit them to the insurer[.]

29 C.F.R. § 2510.3-1(j)(3) (bracketing and emphasis supplied).  Nevertheless, based on a review of PPG's selection, implementation, and maintenance of the supplemental long term disability benefits policy, the court concludes that this element is not met.

Both of the policies involved in this case were issued to PPG by defendant Continental Casualty Company ("CNA"),[27] following PPG's solicitation of bids from a variety of insurers.[28]  After selecting CNA's policies, "PPG undertook to negotiate terms of the policies on behalf of its employees, including negotiating the amount of premiums, amount of coverage available, and which employees, if any, would be ineligible to participate."[29]  Although defendant Hartford Life Group Insurance Company ("HLGIC") acquired CNA's group benefits business and actually administers the claims process,[30] PPG continues to be involved in more than merely

---

[27] Doc. no. 4, Defendants' Statement of Facts, ¶ 3; doc. no. 7, Response to Defendants' Statement of Facts, ¶ 3.

[28] Doc. no. 11, Ex. 1, ¶ 3.

[29] *Id.*

[30] Doc. no. 4, Defendants' Statement of Facts, ¶ 3; doc. no. 7, Response to Defendants' Statement of Facts, ¶ 3.

deducting policy premiums from employees' paychecks and remitting those premiums to HLGIC.[31]  For example, PPG oversees enrollment, furnishes employees with a summary plan description that incorporates the terms of both the supplemental and primary policies, and provides (and assists employees in completing) claim forms.[32] Under an established agreement with the insurer, a medical doctor employed full time with PPG completes the "Physician's Statement" that must accompany any claim for benefits.[33]  Finally, PPG has the authority to cancel coverage on behalf of its employees if it determines that either the primary *or* supplemental policy is not satisfactory.[34]

The cases indicate that these badges of participation, viewed in the light most favorable to plaintiff, *see Anderson*, 369 F.3d at 1262, are more than sufficient to bring the supplemental plan outside the "safe harbor" provision.  In *Shipley v. Provident Life & Accident Insurance Co.*, 352 F. Supp. 2d 1213 (S.D. Ala. 2004), for example, another court in this Circuit confronted an almost identical situation, and

---

[31] Doc. no. 11 Ex. 1, ¶ 7.

[32] *Id*. at ¶¶ 5, 8.  Plaintiff does not directly dispute that PPG *actually* provides claims forms, but she does point out that the terms of the supplemental policy contemplate the insurer providing the forms.  *See* doc. no. 7, Plaintiff's Statement of Facts, ¶ 8; *see also* doc. no. 4, Ex. B (Supplemental Plan), p. 5 (noting that "We [the insurer] will furnish claim forms within 15 days" after receiving notice of a claim).  The court, however, is concerned with the employer's *actual conduct*, not merely what the terms of the policy anticipate.

[33] Doc. no. 11 Ex. 1, ¶ 7.

[34] *Id*. at ¶ 10.

-13-

held that the "safe harbor" was barred.  Like this case, the plaintiff there conceded that the primary long term disability policy offered through her employer was subject to ERISA, but contended that the supplemental disability policy fell within the "safe harbor" regulation.  *Id*. at 1215.  One central issue was whether the employer's conduct satisfied the endorsement prong.  *See id*.  After reviewing the evidence, the court noted that, as here, "AmSouth [the employer] selected Provident as the sole insurer" of its supplemental plan.  *Id*. at 1216.  Similar to the present situation, the supplemental plan was voluntary, but in the event an employee elected to participate, the insurer was not negotiable.  *See id*.  Moreover, AmSouth "was involved in the selection of the terms of the policies," and "had interaction with Provident concerning policy premiums, coverages, changes and other aspects central to the maintenance of the [supplemental] plan."  *Id*.  In effect, AmSouth's role in *Shipley* mirrored the role played by PPG in the present case, and the court in *Shipley* held that the employer had been more active than the "safe harbor" permits.  *See id*.

The Eleventh Circuit also has confronted a similar set of facts.  In *Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207 (11th Cir. 1999), the court explained its reasoning in rejecting a claim that the "safe harbor" applied:

> The regulation explicitly obliges the employer who seeks its safe harbor to refrain from *any* functions other than permitting the insurer to publicize the program and collecting premiums.  Simply Fashion did a

lot more.  It picked the insurer; it decided on key terms, such as portability and the amount of coverage; it deemed certain employees ineligible to participate; it incorporated the policy terms into the self-described summary plan description for its cafeteria plan; and it retained the power to alter compensation reduction for tax purposes.  So the safe harbor is barred.

*Id*. at 1213-1214 (footnote omitted) (emphasis in original).  It should be clear by this point that PPG's participation matches that of the employer in *Butero*.  PPG negotiated the major features of the supplemental policy at issue, and incorporated the terms of that policy into its own summary plan description.  In fact, PPG actually appears to be *more* involved with the supplemental policy on an ongoing basis than the employer in *Butero*:  PPG itself provides the physician who completes certain paperwork that accompanies any claim for benefits, and it retains the right to review and cancel the supplemental policy if the terms are not to its liking.[35]  In light of all this, the court easily concludes that the endorsement element is not met — *i.e.*, PPG has failed to refrain from "endorsing" the policy; and, thus, the "safe harbor" is not available.[36]  *See id*. at 1214; *Shipley*, 352 F. Supp. 2d at 1216.

---

[35] Doc. no. 11 Ex. 1, ¶¶ 7, 10.

[36] Plaintiff repeatedly protests that the "safe harbor" must be met because the supplemental policy is "a separate and fundamentally different contract of insurance from the [primary long term disability] Plan."  Doc. no. 7, p. 11.  The court is at a loss to explain plaintiff's persistence in this argument; it is painfully obvious that the status of the supplemental policy as a separate contract from the primary policy is wholly irrelevant to the applicability of the "safe harbor" provision.  The only requirements are the four elements listed above.  Since only the endorsement element is contested, and the evidence irresistibly indicates that this element is not met, the "safe harbor" does not apply.

**C.    Does the Supplemental Policy Otherwise Qualify as an ERISA Benefit Plan?**

Having concluding that the "safe harbor" is out of reach, the court now must turn to "the high-seas definition of an 'employee welfare benefit plan' to see if the [supplemental] insurance policy here qualifies." *Butero*, 174 F.3d at 1214.

In order for an employee plan to be governed by ERISA, there must be (1) a plan, fund, or program (2) established or maintained (3) by an employer or by an employee organization (4) for the purpose of providing benefits (5) to plan participants and their designated beneficiaries. *See*, *e.g.*, *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 (11th Cir. 2004). Although defendants offer virtually no argument on this crucial issue, plaintiff contends, at length, that the supplemental policy is not "established or maintained" by her employer, PPG.[37] The "established or maintained" language comes from element two, but after reading plaintiff's submission, it appears that it is the confluence of elements two and three that is really being challenged.[38] This is not surprising, as the Eleventh Circuit has applied these elements simultaneously in past cases. *See*, *e.g.*, *id*. ("ERISA does not apply unless *the employer itself* established *or* maintained the plan.") (some emphasis in original).

---

[37] *Id*. at p. 12.

[38] The other elements of the statute are not contested. *See generally id*. at pp. 12-17.

Quoting with approval a Tenth Circuit case, the panel in *Anderson* explained that "the 'established or maintained' requirement is designed to ensure that the plan is part of an employment relationship." *Id*. (quoting *Gaylor v. John Hancock Mutual Life Insurance Co.*, 112 F.3d 460, 464 (10th Cir. 1997) (some alterations deleted). This is done by "looking at the degree of participation by the employer in the establishment or maintenance of the plan." *Id*. With that in mind, the court must "examine all the surrounding facts and circumstances," *Anderson*, 369 F.3d at 1264, ever mindful of the fact that "[a] *decision* to extent benefits is not the establishment of a plan or program." *Donovan v. Dillingham*, 688 F.3d 1367, 1373 (11th Cir. 1982) (*en banc*) (emphasis supplied). Rather, "[a] plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit."[39] *Butero*, 174 F.3d at 1214. Factors indicative of plan "maintenance" include involvement in the payment of benefits, performance of "all the administrative

---

[39] Without departing from the totality inquiry, the Eleventh Circuit has promulgated a non-exclusive list of seven factors that may indicate establishment or maintenance by an employer:

> (1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent.

*Butero*, 174 F.3d at 1215. *See also Anderson*, 369 F.3d at 1265 (noting that "[t]hese factors are equally important in determining whether an employer *maintained* the plan") (emphasis in original).

functions," and alteration of "critical terms of the policy."  *Anderson*, 369 F.3d at 1265.

In the present case, there is no need to determine whether PPG "maintained" the supplemental plan — although certain factors suggest that it did — because the court has little doubt that PPG "established" that policy.  It was PPG, after all, that took the initiative and solicited bids from insurers.[40]  *Cf. Anderson*, 369 F.3d at 1266 (finding establishment where the employer "brought the UNUM Plan into existence by choosing the insurance provider"); *Butero*, 174 F.3d at 1214 (finding establishment in part because the employer consulted an insurance agent, . . . [and] completed an application form for the policy"); *Cowart v. Metropolitan Life Insurance Co.*, 444 F. Supp. 2d 1282, 1294 (M.D. Ga. 2006) (noting the fact that the employer "used the services of its accountant to help acquire the policies" is relevant to the establishment inquiry).  Following acceptance of a bid, PPG negotiated the terms of the policy, the scope of eligibility, and the premiums.[41]  *Cf. Anderson*, 369

---

[40] Doc. no. 11, Ex. 1, ¶ 3.

[41] *Id.*  Plaintiff seems to believe that, "[b]ecause PPG does not determine eligibility under the terms of the Supplemental policy, the Supplement is not 'established' by PPG."  Doc. no. 7, p. 14. Not only is this statement legally unsupported (the identity of the entity that determines eligibility is only one consideration to be weighed), it is factually misleading as well:  the evidence actually shows that PPG *did* negotiate the parameters of eligibility when it set up the supplemental policy. *See* doc. no. 11, Ex. 1, ¶ 3 (noting that "[f]ollowing its selection of the CNA policies, PPG undertook to negotiate terms of the policies on behalf of its employees, including negotiating . . . which employees, if any, would be ineligible to participate"); *see also id.* at ¶ 9 (noting that "if an employee who is eligible for coverage under the CNA Basic LTD or Supplemental LTD policy has

F.3d at 1265 (finding establishment where the employer "limited eligibility to hourly employees who had completed a three-month waiting period, making the UNUM Plan a benefit closely tied to the employer-employee relationship"); *Butero*, 174 F.3d at 1214 (finding establishment where the employer "selected the terms of the group insurance policy"); *Shipley v. Provident Life & Accident Insurance Co.*, 352 F. Supp. 2d 1213, 1217 (S.D. Ala. 2004) (same).  After establishing the policy, PPG continued to be involved in distributing claim forms, and in providing an in-house physician to complete certain paperwork for claimants.[42]  *Cf. Anderson*, 369 F.3d at 1266 (finding it significant that the employer "maintains a supply of claim forms in its offices[,] . . . fills out an employer section of the claim form, verifies employee eligibility, and sends the form to [the insurer]").

Moreover, PPG "identified itself, in internally distributed documents to employees, with the [supplemental] plan." *Shipley*, 352 F. Supp. 2d at 1217.  At the time plaintiff was hired by PPG, she was given a booklet bearing PPG's logo and entitled "Supplemental Long-Term Disability Benefit."[43]  No where in that booklet does PPG imply that the supplemental policy was a benefit created exclusively by an

---

employment terminated, the employee will no longer be covered under either policy").

[42] *Id*. at ¶¶ 5, 8.

[43] Doc. no. 7, Ex. 1 (Affidavit of Deritha Bassham), p. 2 (referring to appended Ex. 2 (Supplemental Benefit Booklet).

outside provider, or that PPG itself did not have some involvement in arranging for the plan.[44]   The same goes for the summary plan description provided to enrolled employees, which also bears PPG's monogram.[45]   The summary plan description actually  contains a disclaimer toward the end, noting that "PPG expressly reserves the right to amend, modify or terminate these benefit programs at any time and for any reason."[46]   Similarly, at the time plaintiff requested coverage under both the primary and supplemental plans, she signed her name on an enrollment form immediately below the following statement:  "I accept the benefits *offered by PPG Industries Inc*. and authorize deductions from my earnings of any required contributions towards the cost of the benefits which I have elected above."[47]   All of these factors are strongly reminiscent of the factual situation that led the court in *Anderson* to conclude that the "establishment" element was satisfied:

> Shaw's representations in its internally distributed documents suggested that Shaw itself established the UNUM Plan.  The Shaw Emblem appears on all of the documents related to the UNUM Plan, including the Benefits Portfolio, the UNUM Plan Booklet, the enrollment form, and the claim form.  Shaw includes the UNUM Plan in a comprehensive

---

[44] *See generally id*. at Ex. 2.

[45] *See id*. at ¶ 8 (noting that "PPG also provides its employees with a Summary Plan Description" which incorporated the terms of the long term and supplemental policies); doc. no. 11, Ex. 4 (Summary Plan Description).

[46] Doc. no. 11, Ex. 4, p. 107.

[47] *Id*. at Ex. 3 (Plaintiff's Enrollment Form) (all upper-case type removed, other emphasis supplied).

list of its employee benefits and refers to the UNUM Plan as the "Shaw Optional Long Term Disability Plan."

*Anderson*, 369 F.3d at 1266.

For all of the foregoing reasons, the court finds that — even viewing the evidence in the light most favorable to plaintiff, *see id*. at 1262 — it is nonetheless patently clear that PPG "established" the supplemental disability plan. Thus, the supplemental policy is governed by ERISA. *See Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999).

## PART FOUR

### *ERISA Preemption*

Important consequences flow from the court's conclusion that the supplemental long term disability policy is governed by ERISA. Most notably, as outlined above, ERISA broadly preempts state law. *E.g.*, *Hardy v. Welch*, 135 F. Supp. 2d 1171, 1177 (M.D. Ala. 2000). The courts have identified two distinct ways in which this may occur. *Id.* at 1178 ("Preemption based on ERISA may take one of two forms.").

The first form of ERISA preemption, known as "complete" or "super" preemption, "arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits." *Butero*, 174 F.3d at 1211 (citing *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)).

The fundamental principle is that, "[w]hen Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331." *Id*. at 1211-1212 (quoting *Taylor*, 481 U.S. at 63-64).   In complete preemption cases, state law claims are not dismissed, but are "*recharacterize*[*d*] . . . into a federal claim under § 1132." *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003) (emphasis in original).  The doctrine is thus primarily useful for jurisdictional questions. *Id*. ("The issue of complete preemption is jurisdictional; meaning, if the claims are not completely preempted, they are not properly removed and must be remanded to state court.").

The other form of preemption — and the one at issue in the present case — is referred to as "defensive" preemption. *See*, *e.g.*, *Cotton v. Massachusetts Mutual Life Insurance Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005); *Butero*, 174 F.3d at 1212. Defensive preemption is derived from ERISA's explicit preemption provision, 29 U.S.C. § 1144(a).  *Cotton*, 402 F.3d at 1281.  Section 1144(a) states that ERISA provisions "shall supercede any and all State laws insofar as they may now or hereafter *relate to* any [ERISA-governed] employee benefit plan."[48]  29 U.S.C. §

---

[48] The Eleventh Circuit has announced that "[a] party's state law claim "relates to" an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187

1144(a) (emphasis supplied).  The effect of defensive preemption is to "provide[] .

. . an affirmative defense to certain state-law claims." *Hardy*, 135 F. Supp. 2d at

1178.  As such, "defensive preemption does not furnish federal subject-matter

jurisdiction under 28 U.S.C. § 1331 . . . . On the other hand, defensive preemption

*does require dismissal of state-law claims*." *Butero*, 174 F.3d at 1212 (emphasis

supplied).  *See also Ervast*, 346 F.3d at 1014 ("The defensive preemption issue . . .

is substantive; therefore, either in state or federal court, when a state law claim is

brought, the defendant may raise the defense that the claims are preempted by ERISA

under § 1144, and should be dismissed.").  Of course, if defensive preemption applies

and state law claims are dismissed, claims asserted under ERISA itself may remain

a part of the lawsuit.

   "'The complete preemption and defensive preemption doctrines are very

complicated and the cases are numerous.'" *Cotton*, 402 F.2d at 1282 (quoting *Wilson*

*v. Coman*, 284 F. Supp. 2d 1319, 1341 (M.D. Ala. 2003)).  Fortunately, plaintiff has

eliminated the need for a lengthy analysis by conceding that, if the supplemental

policy is an ERISA employee benefit plan, preemption is a foregone conclusion.[49]

---

[49] *See* doc. no. 7, p. 5 (explaining that plaintiff will "concede that if this Court were to
determine that the Supplement is a part of the ERISA Plan then the Defendant's Motion as to the
state law claims, extra-contractual damages and the jury demand are to be granted").

This is not to imply that there was any question about this issue, though:  the Supreme Court and the Eleventh Circuit have each held that state law bad faith and breach of contract claims are defensively preempted by ERISA.  *E.g.*, *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987) (holding that state law bad faith, breach of contract and fraud claims are all preempted under 29 U.S.C. § 1144); *Gilbert v. Alta Health & Life Insurance Co.*, 276 F.3d 1292, 1297-1301 (11th Cir. 2001) (citing *Pilot Life* and holding that state law bad faith and breach of contract claims are defensively preempted); *Swerhun v. Guardian Life Insurance Co. of America*, 979 F.2d 195, 197 (11th Cir. 1992) (noting that the Eleventh Circuit has "consistently held that ERISA preempts state law breach of contract claims").

In light of the parties' agreement that the primary policy is subject to ERISA,[50] and the court's conclusion that the supplemental policy also is subject to that statute, "there can be no dispute that the common law causes of action asserted by the plaintiff[] — bad faith refusal to pay . . . and breach of contract — 'relate to' an employee benefit plan and therefore fall within ERISA's express preemption clause [29 U.S.C. § 1144]."  *Amos v. Blue Cross-Blue Shield of Alabama*, 868 F.2d 430, 431-32 (11th Cir. 1989).  Defendants are therefore due summary judgment on count

---

[50] *Id*. at pp. 1-2 ("The Plaintiff admits that the primary PPG Employee Welfare Plan is an ERISA Plan and denies that the Supplemental Contract is an ERISA, [*sic*] plan.").

three in its entirety.  Count two, to the extent that it relies upon state contract law in asserting a right to recover, must also be resolved in defendants' favor.  Normally, the court would grant plaintiff leave to re-plead count two under ERISA, *cf. Cowart v. Metropolitan Life Insurance Co.*, 444 F. Supp. 2d 1282, 1295 (M.D. Ga. 2006), but the language of that count already incorporates the essentials of an ERISA cause of action.  Therefore, count two will remain as a claim under that statute alone.

Because the prayer for extracontractual and punitive damages is confined to count three[51] (which does not survive this opinion), there is no need to rule on the motion to the extent that it raises these issues.[52]  Finally, as discussed above, the Eleventh Circuit has held that there is no right to a jury trial in actions brought pursuant to ERISA.  *See Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522, 1527 (11th Cir. 1996), *cert. denied*, 519 U.S. 930 (1996).  Having dismissed all claims except those pled under ERISA, the jury demand is due to be stricken.

## PART FIVE

### *Is PPG Industries, Inc., a Proper Party Defendant?*

---

[51] Defendants worry that count two also seeks extracontractual damages, but the *ad damnum* clause of that count merely requests "all benefits to which [plaintiff] is entitled under the terms of the [policies], interest which has accrued on those benefits, attorney [*sic*] fees pursuant to 29 USCA § 1132(g), and costs."  Doc. no. 12, Count 2, ¶ 7 (emphasis deleted).  The court detects no prayer for extracontractual damages in this language.

[52] Of course, count four seeks actual and compensatory damages stemming from PPG's alleged wrongful termination of plaintiff.  *Id.* at Count 4, ¶ 7.  That count is not the subject of the current motions, however, and thus the court expresses no opinion on any issues related thereto.

The last matter the court must address is defendants' request that plaintiff's employer be dismissed from this action. Defendants cite 29 U.S.C. § 1132(d)(2) and several cases from other circuits for the proposition that "an employer is not a proper party in an ERISA action when the only relief sought is recovery of plan benefits[,] since ERISA only permits suits against the plan as an entity in these situations."[53] This statement is *doubly* wrong.

First, in point of fact, the Eleventh Circuit has unequivocally held that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mutual Life Insurance Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citing *Rosen v. TRW, Inc.*, 979 F.2d 191, 193-94 (11th Cir. 1992)). If it is the employer who administers the plan, a lawsuit is correctly brought against the employer. *Hamilton v. Allen-Bradley Co., Inc.*, 244 F.3d 819, 824 (11th Cir. 2001) ("[I]f the employer is administering the plan, then it can be held liable for ERISA violations."); *Rosen*, 979 F.2d at 193-194 ("[W]e hold that if a company is administering the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document."). Clearly, then, there

---

[53] Doc. no. 4, p. 12.  Section 1132(d)(2) provides that:  "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."  29 U.S.C. § 1132(d)(2).

is no *per se* rule against joining the employer as a defendant in an ERISA benefits

lawsuit.

Second, it is certainly not true that the plan itself is the *only* proper defendant

in a case like this.  To the contrary,

> an *in personam* order enjoining the payment of benefits under section
> 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)] must be directed to a person
> or entity *other than the plan itself*.  While ERISA § 502(d)(1),29 U.S.C.
> § 1132(d)(1), does state that "[a]n employee benefit plan may sue or be
> sued . . . as an entity," nothing in ERISA permits the district court to
> issue an injunctive order solely against the plan.  Rather, the case law of
> this circuit demonstrates that an order enjoining the payment of benefits
> from an ERISA plan must issue against a party capable of providing the
> relief requested. . . . [C]*f. Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d
> 1073, 1074 (5th Cir. 1990) (affirming district court's dismissal of
> plaintiff's second amended complaint in part for failure to name the plan
> administrator as an "indispensable party").  We therefore reject the
> notion that an injunctive order to pay benefits under section
> 502(a)(1)(B) of ERISA can issue solely against an ERISA plan as an
> entity.

*Hunt v. Hawthorne & Associates*, *Inc.*, 119 F.3d 888, 908 (11th Cir. 1997) (emphasis

supplied) (footnote omitted).[54]

Thus, rather than arbitrarily dismissing PPG as a party merely because of its

status as the employer, the court must evaluate the facts and ask "whether [PPG] had

sufficient *decisional control over the claim process* that would qualify it as a plan

---

[54] In the omitted footnote, the court pointed out that 29 U.S.C. § 1132(d)(2) merely
"contemplates legal relief and *does not apply to an action to recover benefits* under section
502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)]."  *Hunt*, 119 F.3d at 908 n.54 (emphasis supplied).

administrator under *Rosen*."   *Hamilton*, 244 F.3d at 824 (emphasis supplied).

Although plaintiff's brief is short on argument, her attorney apparently believes that

application of this test is unnecessary, as the summary plan description and other

documents on file identify PPG as the "plan administrator" of both the primary and

supplemental long term disability policies.[55]   It is true that "[p]roof of the plan

administrator may come from the plan document."   *Id*.   But a careful reading of the

relevant cases suggests that solitary reliance on the plan documents to answer the

factual question of who controls the decisional process would "elevate form over

substance."   *Rosen*, 979 F.2d at 193 n.1.   *See also Hamilton*, 244 F.3d at 824 (noting

that proof of plan administrator status may "also come from the factual circumstances

surrounding the administration of the plan, even if these factual circumstances

contradict the designation in the plan document").   The court is therefore obliged to

sift through the factual evidence to determine whether PPG exercised the requisite

"decisional control."   *Hamilton*, 244 F.3d at 824.

---

[55] To be clear, plaintiff contends that PPG is only the plan administrator of the primary policy, not the supplemental policy.  Still, there can be little doubt that the relevant documents anoint PPG plan administrator of *both* policies.  *See*, *e.g.*, doc. no. 4, Ex. A (Long Term Disability Plan), p. 10 (stating that PPG is the plan administrator of the "PPG Group Long Term Disability Plan," which clearly was meant to refer to both the primary and supplemental policies); doc. no. 11, Ex. 4, p. 102 ("The Plan Administrator for the plans described herein [including the primary and supplemental policies] is the Director, Payroll, Benefits, and HRIS, One PPG Place . . . . The plans are administered by PPG Industries, Inc. through the Human Resources Department at your location.").

The Eleventh Circuit has applied this framework in at least three different situations, and reached dispositive conclusions in two of them. The earliest case was *Rosen*, wherein the court acknowledged that it had "never [before] addressed the question whether an employer who takes an active part in the administration of a plan can be held liable for ERISA claims." *Rosen*, 979 F.2d at 193. *Rosen*, however, is clearly distinguishable from this case. The employer there was not actually designated as plan administrator in the policy documents; instead, an administrative committee was given exclusive discretion to administer the policy and claims thereunder. *Id*. at 192. Believing that the committee was a mere alter ego of the employer, plaintiff named the employer as the sole defendant, but did not explain why. *Id*. The district court dismissed the case, and refused to allow plaintiff to amend the complaint so as to include the allegation that the employer was the true administrator. *Id*. at 194. The Eleventh Circuit reversed, holding that the plaintiff should at least be allowed to attempt pursuit of the *de facto* administrator theory on remand. *Id*. Unlike in *Rosen*, no party here contends that PPG was acting as the true, behind-the-scenes administrator. To the contrary, plaintiff argues at one point in her brief that "the role of the Defendant PPG with respect to the Supplemental Contract

-29-

is a non-functioning role."[56]

This feature distinguishes the other Eleventh Circuit cases as well. In *Garren*, the panel held that the employer was the proper defendant where the plan documents stated that the employer was the plan administrator, and the insurer submitted an affidavit assuring that it exercised no control over the policy. *Garren*, 114 F.3d at 187. Likewise, in *Hamilton*, the court considered the employer a proper defendant where it was designated the plan administrator *and* the co-agent for plan and claim administration. *See Hamilton*, 244 F.3d at 824. Arguably, the deciding factor in *Hamilton* was the presence of allegations that the employer's human resources director told the plaintiff she did not qualify for benefits, and refused to provide her with a claim form, thus indicating the employer's prominent role in the claims process. *Id.* at 822. These sorts of allegations are notoriously absent from the case at hand. Instead, the evidence here suggests that the PPG did nothing more than freely hand out claim forms and assist in their completion.

Given these factual distinctions, the most persuasive case available comes from another court within this Circuit. In *Henderson v. Transamerica Occidental Life Insurance Co.*, 102 F. Supp. 2d 1278 (M.D. Ala. 2000), *aff'd mem.*, 263 F.3d 171

---

[56] Doc. no. 7, p. 12. Inexplicably, counsel for plaintiff does not even state a position on PPG's level of involvement with the primary plan.

(11th Cir. 2001), "[t]he undisputed evidence . . . demonstrate[d] that Ralston Purina [the employer] established and sponsored the Plans . . . . [and served as] the administrator of the Plans." *Id*. at 1281.  After reviewing the same cases discussed above,[57] Chief Judge Albritton succinctly explained his reasons for reaching a different conclusion:

> This court reads the aforementioned authority as allowing for the imposition of liability on an employer/plan administrator under relevant ERISA provisions in certain circumstances.  The key difference between this case and the cases cited by the Plaintiff is that no evidence in the record before this court suggests that Ralston Purina exerted any control whatsoever over the disposition of Plaintiff's benefit claims.

> The evidence, viewed in the light most favorable to the Plaintiff, establishes only that Ralston Purina acted as a conduit between its employees and their insurers (Transamerica and LINA).  It is undisputed that Transamerica and LINA, not Ralston Purina, administered claims for benefits made by Ralston Purina employees.  Moreover, Plaintiff has not produced any evidence which could possibly suggest that Ralston Purina exercised any control over the decision to deny Plaintiff's claims in this case.  Ralston Purina did provide forms to the Plaintiff so that he could lodge his claims directly with LINA and Transamerica. . . .  What Ralston Purina did not do was decide the merits of Plaintiff's claims under the Plans.

> Plaintiff glosses over the distinction between Ralston Purina as

---

[57] At the time *Henderson* was decided, the Eleventh Circuit had issued an opinion in *Hamilton* that was subsequently vacated by the opinion discussed herein.  *See Hamilton*, 244 F.3d 819 (vacating opinion at 217 F.3d 1321 (2000)).  Critically, however, a comparison of the two opinions reveals that there were no changes made to the relevant sections.  Thus, the discussion of *Hamilton* in Judge Albritton's opinion remains accurate.

the plan founder and administrator on the one hand, and LINA and Transamerica as claims administrators on the other.  Undoubtedly, Ralston Purina has broad authority over the ERISA Plans in this case. For example, Ralston Purina set up the Plans, has selected the Plans' terms, and has selected Transamerica, and now LINA as the Plan insurers.  But Ralston Purina has delegated the responsibility for claims decisions to its insurers.  . . .

Absent evidence of some degree of decisional control on the part of Ralston Purina, it is illogical to require it to stand before this court to face a charge of wrongful denial of benefits.

Id. at 1281-1282 (internal citations omitted).

This case is *very* similar to *Henderson*:  although officially designated as "plan administrator" in the summary plan description,[58] PPG actually appears to play only a ministerial role in the claims process.[59]  All authority to interpret and apply the terms and conditions of the primary and supplemental policies, and to "decide and resolve all claims for benefits" has been delegated by PPG to the insurer.[60]  Indeed, plaintiff does not even *allege* that PPG had any decisional control over the disposition of her requests for benefits — she merely asserts that PPG is a proper party because

---

[58] Doc. no. 11, Ex. 4, p. 102 ("The Plan Administrator for the plans described herein [including the primary and supplemental policies] is the Director, Payroll, Benefits, and HRIS, One PPG Place . . . . The plans are administered by PPG Industries, Inc. through the Human Resources Department at your location.").

[59] *Id.* at Ex. 1, ¶¶ 5, 7 (explaining that PPG maintains a supply of the insurer's claims forms, answers questions relating thereto, assists in completion of the forms, and forwards them to the insurer).

[60] Doc. no. 4, Ex. B, p. 10 (Long Term Disability Plan Letter of Endorsement).

it has the title of "plan administrator."   The Eleventh Circuit has rejected this argument, and so does this court.  *See*, *e.g.*, *Hamilton*, 244 F.3d at 824 (applying the *Rosen* test notwithstanding the fact that the employer was designated "plan administrator" in the relevant documents, and noting that the courts must look to "the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document").

Thus, for all of the reasons announced in *Henderson*, PPG is due to be dismissed as a party to the counts of plaintiff's complaint seeking recovery of benefits under the primary and supplemental policies.

## Conclusion

In accordance with the foregoing, defendants are due summary judgment on all of plaintiff's state law claims, and their request that the court strike plaintiff's jury demand also is due to be granted.  Insofar as the motion seeks summary judgment as to the prayer for extracontractual and punitive damages, it will be denied as moot in light of the fact that the counts of the complaint requesting such relief do not remain a part of this lawsuit.  Finally, since PPG is not a proper party defendant to the counts seeking recovery of benefits, PPG will be granted summary judgment on all remaining counts except count four, which states a claim for wrongful termination of

plaintiff's employment following a claim for benefits under the subject policies.  An

appropriate order will be entered contemporaneously herewith.

      DONE this 13th day of November, 2006.

                                         United States District Judge