# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DERITHA BASSHAM, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CONTINENTAL CASUALTY | ) | Civil Action No. 06-S-630-NE |
| COMPANY; HARTFORD LIFE | ) | |
| GROUP INSURANCE COMPANY; | ) | |
| PPG INDUSTRIES, INC.; and PPG | ) | |
| INDUSTRIES, INC. EMPLOYEE | ) | |
| WELFARE PLAN, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit was filed by Deritha Bassham pursuant to several provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. In her amended complaint, plaintiff prays for long-term disability benefits allegedly due to her under two ERISA-governed group insurance policies.[1] *See* 29 U.S.C. § 1132(a)(1)(B) (allowing participants and beneficiaries of ERISA-governed insurance plans to bring suit "to recover benefits due . . . under the terms of [the] plan"). Both policies were established by her employer, defendant PPG Industries, Inc. ("PPG"), but the court has previously ruled that PPG is not a proper defendant

---

[1] *See generally* doc. no. 12 (Amended Complaint).

to a complaint seeking recovery of allegedly past-due benefits.[2]  Instead, plaintiff must pursue her claims against the other defendants to this action:  Continental Casualty Company, Hartford Life Group Insurance Company, and the Plan itself.

Plaintiff alleges in Count IV her amended complaint that she was wrongfully terminated from her employment with PPG "for seeking her [l]ong [t]erm [d]isability benefits."[3]  *See* 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge . . . a participant or beneficiary for exercising any right to which he [or she] is entitled under the provisions of an employee benefit plan[.]").

PPG has moved for summary judgment on this wrongful termination claim,[4] and, for the reasons stated below, its motion will be granted.  The other defendants have separately moved for summary judgment regarding the benefits dispute, and that motion will be addressed in a separate memorandum opinion.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[2] *See* doc. no. 20 (Memorandum Opinion), p. 33.  *See also* doc. no. 21 (Order), pp. 1-2.

[3] Doc. no. 12, Count IV, ¶ 6.

[4] Doc. no. 16 (PPG's Motion for Summary Judgment).

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis supplied).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).

"In making this determination, the court must review all evidence and make all

reasonable inferences in favor of the party opposing summary judgment." *Chapman*

*v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v.*

*City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-

moving party are not unqualified, however.  "[A]n inference is not reasonable if it is

only a guess or a possibility, for such an inference is not based on the evidence, but

is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d

1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary
> judgment unless that factual dispute is material to an issue affecting the
> outcome of the case.  The relevant rules of substantive law dictate the
> materiality of a disputed fact.  A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the nonmoving party
> for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921).  *See also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF RELEVANT FACTS [5]

At all relevant times, PPG has maintained an airplane window and windshield manufacturing facility in Huntsville, Alabama.[6]  Plaintiff was hired by PPG and began working at the Huntsville plant on October 2, 1996, but she was terminated nine years and some months later, on February 24, 2006.[7]  PPG contends that plaintiff's termination was attributable to her failure to follow a clearly established work rule regarding attendance.[8]  As mentioned above, plaintiff disagrees.[9]

The story begins in September of 2000, when plaintiff was injured while performing her job at PPG.[10]  Despite this injury, plaintiff continued to work until

---

[5] ***Nota bene:***  much of the evidence discussed in this section has been attacked by defendant in three separate motions to strike.  *See* doc. no. 32 (PPG's Motion to Strike); doc. no. 41 (PPG's Supplemental Motion to Strike); doc. no. 43 (PPG's Amended Motion to Strike).  These motions need not be ruled upon, however, because even considering all of the arguably relevant but objectionable evidence, summary judgment is proper.  Accordingly, the three motions to strike will be denied as moot.

[6] Doc. no. 17 (PPG's Brief in Support of Summary Judgment), Statement of Undisputed Facts, ¶ 1.

[7] *Id*. at ¶ 3.

[8] *Id*. at ¶ 12.

[9] *See*, *e.g.*, Deposition of Deritha Bassham ("Bassham Depo."), p. 101, line 15 - p. 102, line 3.

[10] *Id*. at p. 113, lines 11-18.

some time in April of 2002.[11]  In August of 2003, plaintiff filed a claim for disability

benefits under PPG's employee disability benefits plan.[12]  An independent company,

The Hartford, determined that plaintiff was eligible for long-term disability benefits

because, as the as the plan required, she could not at that time perform *her*

occupation.[13]  Disbursement of benefits commenced thereafter, but with a retroactive

effective date of April 17, 2003.[14]

In October of 2003, plaintiff contacted PPG Human Resources Supervisor

Joyce Wright in an effort to obtain clarification as to her employment status while she

was receiving benefits.[15]  By letter, Wright informed plaintiff that:

> If you receive LTD [long-term disability] benefits for two consecutive
> years, the criteria for eligibility changes.  At the end of two years of
> disability, you may continue application for LTD benefits if you are
> unable to engage in *any* occupation or employment for which you are or
> become reasonably qualified based on your training, education or
> experience.
>
> In the event that you do not qualify to continue LTD *at the two-
> year mark* of being disabled, *then* you will be placed on layoff status for
> a maximum period of *24 months*.  If a position becomes available to you
> that you can physically perform and you have the seniority to claim, *you*

---

[11] *Id*.  *See also id*. at p. 15, line 23 - p. 16, line 7.

[12] *See id*. at p. 75, lines 5-13.

[13] *See id*. at p. 75, lines 5-13; *id*. at p. 63, line 21 - p. 64, line 1; *id*. at p. 79, lines 2-16.  *See also* doc. no. 197, Statement of Undisputed Facts, ¶ 5.

[14] *See* Bassham Depo., p. 75, lines 5-13.

[15] *See* Affidavit of Deritha Bassham ("Bassham Aff."), p. 2; *id*. at Ex. A (Letter from Joyce Wright).

*will be recalled to work.* If not, *at the end of the 24 months of layoff,* you will be terminated from employment with PPG.[16]

As contemplated in this letter, and consistent with the pertinent contractual language, plaintiff received regular payment of long-term benefits for a period of two years, through April of 2005.[17] At that time, or shortly thereafter, The Hartford informed plaintiff that she could not meet the contractual requirements for continued receipt of benefits — *i.e.*, she could not establish that she was unable to perform *any* occupation for which she was qualified.[18] Plaintiff appealed that decision, but, by letter dated November 15, 2005, The Hartford informed her attorney that the denial of continued benefits had been upheld.[19]

Although plaintiff does not specifically say so, she implies that her understanding of her situation from that point on — based on the letter from Joyce Wright — was that she was *then* automatically placed on "layoff status for a maximum period of 24 months," but would not formally be terminated unless and until that period ended without PPG recalling her to duty.[20] Accordingly, plaintiff

---

[16] Bassham Aff., Ex. A (emphasis supplied).

[17] *See, e.g.*, Bassham Depo., p. 76, lines 16-19; doc. no. 17, Statement of Undisputed Facts, ¶ 9.

[18] *See* doc. no. 17, Statement of Undisputed Facts, ¶¶ 5, 9. *See also generally* Bassham Depo., p. 79, line 2 - p. 80, line 4.

[19] Bassham Aff., Ex. B (Letter from Janet Vogel Freeman). *See also* Bassham Depo., p. 80, line 15 - p. 83, line 10.

[20] Bassham Aff., Ex. A.

made no effort to contact any PPG management officials about returning to work after learning of The Hartford's denial of her appeal in November of 2005.[21]

This inaction eventually caught the attention of Michael Willey, PPG's Personnel Manager at the Huntsville plant.[22]  Willey — who was himself only hired in December of 2005[23] — learned that plaintiff was no longer eligible for long-term disability benefits on December 8, 2005.[24]  When, on February 24, 2006, plaintiff still had not contacted management or returned to work, Willey wrote her a letter informing her that she was being terminated, effective immediately.[25]  In taking this action, Willey relied upon a general provision of PPG's attendance policy providing that employees with "unreported absences of three consecutive workdays . . . will be considered to have 'QUIT WITHOUT NOTICE', unless there are verifiable, bona-

---

[21] *See*, *e.g.*, Bassham Depo., p. 95, lines 2-9; *id*. at p. 94, lines 5-9.

[22] Doc. no. 17, Statement of Undisputed Facts, ¶¶ 2, 9; Affidavit of Michael Willey ("Willey Aff."), ¶¶ 1, 9, 10.

[23] Doc. no. 17, Statement of Undisputed Facts, ¶ 2.

[24] *Id*. at ¶ 9.

[25] Willey Aff., ¶¶ 10-11.; *id*. at Ex. D (Letter from Michael Willey).  In pertinent part, the letter stated simply:

> Your application for LTD benefits was denied on December 8, 2005.  Since that denial of LTD benefits, you have made no contact regarding your return to work.  This letter is to notify you that your employment with PPG Industries, Inc. is being terminated effective February 24, 2006.

*Id*. (paragraph form supplied).

fide reasons for the absence and the failure to report."[26]    While the simple misunderstanding that plaintiff implies led her to miss work might well have constituted a "verifiable, bona-fide" excuse for violation of this policy, she elected not to appeal her termination.[27]

Plaintiff now contends that she was discharged in retaliation for seeking to exercise her rights under ERISA, but admits no one told her that her actions in seeking disability benefits played any role in her discharge; and, further, that no decisionmaker said anything leading her to believe that such was the case.[28] Additionally, all parties apparently agree that Willey made the termination decision alone, without consulting any other PPG officials, including Gary Dennis and/or Pete Andrich[29] — two individuals with whom plaintiff claims to have discussed her employment status several years earlier, just before she received the arguably misleading correspondence from Joyce Wright.[30]

_____

[26] *Id*. at Ex. B (Attendance and Reporting Policy), p. A-31 (capitalization in original).  *See also* doc. no. 17, Statement of Undisputed Facts, ¶ 6.

[27] Doc. no. 17, Statement of Undisputed Facts, ¶ 17.  Incidentally, PPG's attendance policy has been revised since plaintiff first received a copy at the time she began work in 1996, but all parties agree that the pertinent language remains the same, and plaintiff admits being generally aware of the attendance requirements.  *See* Bassham Depo., p. 62, line 6 - p. 63, line 6; *id*. at p. 120, lines 1-13.

[28] Doc. no. 17, Statement of Undisputed Facts, ¶¶ 14-15.

[29] *See* doc. no. 22 (Plaintiff's Brief in Opposition to Summary Judgment), Statement of Undisputed Facts, ¶¶ 8, 9.  *See also* Willey Aff., ¶ 11.

[30] *See* Bassham Aff., pp. 2-3.

### III. DISCUSSION OF LAW

Title 29, Section 1140 of the United States Code makes it unlawful "for any person to discharge . . . a participant or beneficiary for exercising any right to which [she] is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. "Thus, to prevail under [§ 1140], a plaintiff must show that the alleged discrimination was designed either to *retaliate for the exercise of a right* or to *interfere with the attainment of an entitled right*." *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993) (emphasis supplied). *See also*, *e.g.*, *Gibbs v. BellSouth Telecommunications, Inc.*, 459 F. Supp. 2d 1133, 1138 (N.D. Ala. 2006) ("In short, an employer may not retaliate or interfere with an employee's attempts to exercise her rights under the relevant plan.").

This case falls into the retaliation category.[31]   Regardless of the type of violation alleged, however, "[a] plaintiff bringing an action pursuant to [§ 1140] of ERISA must show that the employer had the 'specific intent to interfere with the employee's right to benefits,'" or to otherwise punish the employee for exercising rights granted by ERISA. *Reynolds v. International Business Machines Corp.*, 320 F. Supp. 2d 1290, 1299 (M.D. Fla. 2004) (quoting *Seaman v. Arvida Realty Sales*,

---

[31] *See* doc. no. 22, pp. 9, 14 (admitting as much).

985 F.2d 543, 546 (11th Cir. 1993)). *See also Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 558 (11th Cir. 1997) ("'The ultimate inquiry . . . is whether the employer had the specific intent to interfere with the employee's ERISA rights.'") (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1222 (11th Cir. 1993)); *Larimer v. International Business Machines Corp.*, 370 F.3d 698, 702 (7th Cir. 2004) (noting that "the plaintiff in an ERISA retaliation case must show that the defendant had a 'specific intent' to punish him for asserting rights under the plan"); *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998) ("To prove a violation of section [1140], plaintiffs must . . . demonstrate that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits").

"This burden can be met either by showing direct proof of discrimination or by satisfying the scheme for circumstantial evidence established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and restated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)." *Clark*, 990 F.2d at 1223 (internal parallel citations omitted). *See also, e.g., Short v. American Cast Iron Pipe Co.*, 961 F. Supp. 261, 265 (N.D. Ala. 1997) (same); *Hamilton v. Mecca, Inc.*, 930 F. Supp. 1540, 1550 (S.D. Ga. 1996) (same). "In the face of direct evidence of discrimination the defendant must prove that the same employment decision would have been made absent any discriminatory intent." *Clark*, 990 F.2d at 1223. But where the plaintiff

relies upon circumstantial proof, she bears the initial burden of establishing a *prima facie* case of an employer's intent to discriminate. *See id*. *See also McDonnell Douglas*, 411 U.S. at 802. Here, plaintiff claims to have both direct and circumstantial proof that she was terminated wrongfully by a decisionmaker who had the specific intent of retaliating against her in response to her exercise of protected ERISA rights. The court takes up these theories *seratim*.

## A.      Direct Evidence of Discrimination

The court is frankly perplexed at plaintiff's contention that she has direct evidence of discrimination. "Evidence is direct when it is sufficient to prove discrimination *without inference or presumption*." *Clark*, 990 F.2d at 1223 (emphasis supplied). "Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Id*. Plaintiff's counsel pursues two related theories in support of the claim of direct evidence. Neither is persuasive.

First, it is argued that the conflict between PPG's policy for recall of disabled employees, as stated in the October 2003 letter from Joyce Wright, on the one hand,[32] and Michael Willey's reliance upon the more general attendance policy, on the other, is *direct evidence* that plaintiff was discharged in retaliation for her exercise of

---

[32] *See* the quoted text accompanying n.16, *supra*.

protected ERISA rights.[33]  This argument is nonsensical.  Even accepting, *arguendo*,
that the Wright letter effectively (and unfairly) lured plaintiff into violating the
general attendance policy, the fact that such bad advice was given is manifestly
insufficient "to prove discrimination *without inference or presumption*."  *Clark*, 990
F.2d at 1223 (emphasis supplied).[34]  Indeed, evidence that an employer violated its
own policy in taking adverse action against an employee is, at most, quintessential
*circumstantial* proof of discrimination.  *See*, *e.g.*, *Walker v. Prudential Property &
Casualty Insurance Co.*, 286 F.3d 1270, 1279 (11th Cir. 2002) ("The bending of
established rules may, of course, be *suggestive* of discrimination.") (emphasis
supplied).

In the alternative, drawing on the text of her termination letter, plaintiff
contends that "the [stated] reason for termination of [her] employment . . . is that she
was denied continuation of her Long Term Disability benefits."[35]  That is simply not
an accurate recapitulation of the letter's contents.  As plaintiff's counsel must
recognize, the letter mentioned the termination of benefits payments only as factual
background, and then went on to state that "[s]ince that denial of LTD benefits, *you*

---

[33] *See* doc. no. 22, p. 10.

[34] *Cf. Nix v. WLCY Radio / Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)
("The employer may fire an employee for a good reason, a bad reason, or for no reason at all, as long
as its action is not for a discriminatory reason.").

[35] Doc. no. 22, p. 12.

*have made no contact regarding your return to work.*"[36]  In short, nothing about this letter even remotely *implies* — much less *establishes* — that plaintiff was terminated for exercising her rights under ERISA.  Accordingly, the court holds that plaintiff has failed to produce any direct evidence of discrimination.

**B.    Circumstantial Evidence of Discrimination**

**1.     The burden-shifting paradigm**

As mentioned above, plaintiffs who rely upon circumstantial evidence must first prove the elements of a *prima facie* case.  *See McDonnell Douglas*, 411 U.S. at 802.

> In the context of a [§ 1140] claim alleging unlawful discharge, a plaintiff may establish a prima facie case of discrimination by showing (1) that he [or she] is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination.

*Clark*, 990 F.2d at 1223.  *See also Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000).  *Accord Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 38 (1st Cir. 1995).  "Establishment of the prima facie case in effect creates a *presumption* that the employer unlawfully discriminated against the employee."  *Burdine*, 450 U.S. at 254 (emphasis supplied).

"The effect of the presumption of discrimination created by establishment of

---

[36] Willey Aff., Ex. D (emphasis supplied).

the prima facie case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254). *See also Barbour*, 63 F.3d at 38. The employer's burden at the second stage of analysis "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). "To satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55 (citation and footnote omitted)). Indeed, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257.

If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *id.*, then the "rebuttable presumption" of discrimination created by the demonstration of a *prima facie* case is refuted, "drops

from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.*
at 255 & n.10.  *See also*, *e.g.*, *Barbour*, 63 F.3d at 39.

In this final step of the analytical process, the burden shifts back to the plaintiff
to "come forward with evidence, including the previously produced evidence
establishing the prima facie case, sufficient to permit a reasonable factfinder to
conclude that the reasons given by the employer were not the real reasons for the
adverse employment decision," but merely a pretext for intentional discrimination.
*Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411
U.S. at 804).  *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir.
2004) ("If the proffered reason is one that might motivate a reasonable employer, a
plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling
with that reason is not sufficient.") (internal citation omitted).  The plaintiff shoulders
that burden by demonstrating "such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered legitimate reasons for its
action that a reasonable factfinder could find them unworthy of credence." *Combs*,
106 F.3d at 1538 (internal quotations and citation omitted).

If a plaintiff demonstrates pretext, he "is entitled to survive summary
judgment," *id.* at 1529, *except* in the rare case where, notwithstanding the evidence
of pretext, "no rational factfinder could conclude that the action was discriminatory."

*Reeves*, 530 U.S. at 134-35.  In any case, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.  *Cf. Owens*, 984 F.2d at 399 (outlining the overarching need for "evidence of the employer's specific intent to violate ERISA").

### 2.     The *prima facie* case

The court pretermits discussion of the first two elements of a *prima facie* case — *i.e.*, qualification for the position, and, entitlement to ERISA protection — because PPG does not argue that those elements are lacking.  *See*, *e.g.*, *Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) (holding that arguments not asserted in briefs need not be considered).  *See also Farrow v. West*, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003) (same).  Instead, PPG focuses its defense on the third element, insisting that "plaintiff cannot offer evidence that the circumstances of her termination give rise to an inference of discrimination."[37]  *See*, *e.g.*, *Wolf*, 200 F.3d at 1343; *Clark*, 990 F.2d at 1223.

To satisfy this third element (which is, in essence, a causation requirement), "the employee must introduce *evidence* suggesting that the employer's decision was directed at ERISA rights *in particular.*" *Clark*, 990 F.2d at 1224 (emphasis supplied).

---

[37] Doc. no. 17, p. 9 (internal quotations omitted).

Plaintiff's theory as to why she was discharged "under circumstances that give rise to an inference of discrimination," *id.* at 1223, is predicated solely upon the October 2003 correspondence from Joyce Wright, in which she was told that she would be placed on "layoff status" for 24 months in the event that she was unable to meet the heightened standard for long-term disability benefits.[38] Considering this explanation to be a statement of PPG policy, plaintiff argues that Michael Willey violated company rules in terminating her employment rather than affirmatively acting to recall her to duty, as arguably contemplated by the letter.[39]

The court is not *entirely* unsympathetic to this position: as stated above, the letter does appear to imply that plaintiff need not return to work unless she is formally "recalled"; accordingly, the letter is in fairly direct contradiction of the general rule that an employee refrain from being absent for three consecutive workdays.[40]  It is also true that, in certain circumstances, violation of "*established*" policies can be indicative of discrimination.  *Walker*, 286 F.3d at 1279 (emphasis supplied).  This, however, is not one of those circumstances, for there is no basis upon which to conclude that this letter created (or relayed) an established "rule" or "policy" that Willey *violated* by later discharging plaintiff in strict accordance with the provisions

---

[38] Doc. no. 22, pp. 16-17.

[39] *See id.*

[40] *Compare* Bassham Aff., Ex. A *with* Willey Aff, Ex. B, p. A-31.

of PPG's collateral attendance policy.[41]  While Willey admits familiarity with all PPG policies,[42] there is no evidence in the record that the advice provided in this letter was drawn from such a policy.  Finally, Willey was not PPG's Personnel Manager at the time the letter was written,[43] and the only available evidence suggests that he did not consult with any other PPG employees before terminating plaintiff's employment in February 2006.[44]

Without some proof that the "layoff status" period mentioned in Joyce Wright's October 2003 letter was an official PPG policy, rather than merely bad or outdated advice — and that such policy trumped the more general attendance rule — no "inference of discrimination" arises from the fact that Willey acted in accordance with the attendance requirement.  *Clark*, 990 F.2d at 1223.  Thus, plaintiff has failed to successfully navigate the first step of the *McDonnell Douglas* paradigm by establishing a *prima facie* case.

### 3.    Rebuttal and pretext

Furthermore, for the same reasons already discussed, plaintiff cannot show pretext.  PPG's asserted reason for terminating plaintiff's employment — *i.e.*, her

---

[41] Nor did the letter explicitly *excuse* plaintiff from complying with any other applicable PPG policies.

[42] Willey Aff., ¶ 2.

[43] *Id*. at ¶ 1.

[44] *Id*. at ¶ 11.

failure to adhere to the attendance policy — is facially legitimate and nondiscriminatory. *See*, *e.g.*, *Godfrey v. BellSouth Telecommunications*, *Inc.*, 89 F.3d 755, 759 (11th Cir. 1996) ("Of course, an employer may demand that an employee return to work after determining that the employee is not disabled, and then discipline that employee for unexcused absences.  The employer does not violate ERISA Section 510 [29 U.S.C. § 1140] just because a court later determines that the employer's good faith disability determination was wrong."); *Barbour*, 63 F.3d at 38 (accepting an employer's statement that it terminated an employee "for failing to report to work or [to] submit any medical certification of disability within ten days of the commencement of his [disability] leave" and a legitimate, nondiscriminatory rationale); *Gibbs*, 459 F. Supp. 2d at 1141 (same).

Rather than recognizing this reason and confronting it "head on," plaintiff "[q]uarrel[s]" with it — a strategy that "is not sufficient." *Wilson*, 376 F.3d at 1088. Specifically, plaintiff argues that Willey should have regarded the representations in the letter of October 2003 as established PPG policy, and then excused plaintiff's violation of the undisputed attendance rule in light of the inconsistency between it and the alleged "layoff status" custom.  But it is not the court's place to determine, after the fact, the soundness of Willey's reasoning.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("No matter how medieval a firm's practices,

no matter how high-handed its decisional process, no matter how mistaken the firm's managers . . . . our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (internal quotations and citations omitted).  Nothing about Willey's decision to follow a clearly established rule from PPG's employee handbook, rather than a purported statement of policy of questionable origin buried within a two-year-old letter that he may never have read, indicates pretext or retaliatory intent.  The court's review of his decision stops there.

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, PPG's motion for summary judgment[45] as to Count IV of plaintiff's amended complaint is GRANTED.  Because the court previously dismissed PPG as a party to all other counts of the amended complaint,[46] it is ORDERED that PPG Industries, Inc., be, and it hereby is, DISMISSED as a party to this lawsuit.  Finally, in view of this resolution, PPG's motions to strike[47] are DENIED as moot.

DONE and ORDERED this 28th day of September, 2007.

United States District Judge

---

[45] Doc. no. 16.

[46] Doc. no. 21.

[47] Doc. no. 32; doc. no. 41; doc. no. 43.

-20-